[Civ. No. 24985. Fourth Dist., Div. One. July 6, 1982.]

FOREMOST INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
WILLIAM O. EANES et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Staitman & Snyder, Jack M. Staitman and Jeffrey L. Krivis for Defendants, Cross-complainants and Appellants.

Larry L. Curran for Plaintiff, Cross-defendant and Respondent.

OPINION

WIENER, J.—Defendants William and Mary Eanes, insureds under a motor vehicle insurance policy issued by plaintiff Foremost Insurance Company, appeal from a judgment entered against them in a declaratory relief action filed by Foremost. They challenge the trial court's ruling that the policy in question could not possibly apply to indemnify the Eanes for their liability arising out of an accident which occurred while the subject vehicle—a motor home—was in Mexico. We conclude the trial court correctly interpreted the territorial limitation clause in the policy as precluding coverage, and affirm the judgment.

## I

In February 1974, the Eanes loaned their motor home to Mr. and Mrs. Robert Horton and Virgil and Judith Folands for a trip the Hortons and Folands planned to make to Mexico. On February 14, the motor home apparently being driven by one of the Hortons was involved in an accident in Mexico in which the Hortons were killed and the Folands were injured.

At the time of the accident, an insurance policy issued by Foremost insured the Eanes with respect to the motor home.[1] ■ On page two of the policy provisions under a heading "Policy Period, Territory, Purposes of Use," the policy stated, "This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, *while the automobile is within the United States of America, its territories or possessions, or Canada* . . . ."[2] (Italics added.)

The Eanes notified their insurance agent about the accident and, after Williams Eanes provided the company with a statement, Foremost paid the Eanes for the property damage which the motor home sustained.[3] Later, Virgil and Judith Folands attempted to collect under the medical payments portion of the policy for the injuries they sustained in the accident. Relying on the territorial limitation clause in the policy, Foremost refused to pay. The Folands then filed suit against the Eanes relying on the statutory vehicle owner liability provisions of Vehicle Code section 17150[4] and on theories of negligent entrustment. The

[1] The policy provided several different types of coverages: liability, medical payments, comprehensive, collision and uninsured motorist.

[2] The policy as issued by Foremost complied with the statutory requirements of Insurance Code section 11580.1 which constitutes the "exclusive enumerator of required automobile coverage features" under such circumstances. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 525 [88 Cal.Rptr. 246]; see also Ins. Code, § 11580.05; *Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 280 [121 Cal.Rptr. 694].) Nothing in Insurance Code section 11580.1 prohibits a territorial limitation like that present in the Foremost policy.

[3] Only a small portion of the total claim settlement was paid directly to the Eanes. A majority was paid to a bank which was designated as the loss payee under the policy.

[4] Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle . . . by any person using or operating the same with the permission, express or implied, of the owner." Section 17151 limits this statutorily imposed liability for personal injury to $15,000 per person injured and $30,000 per accident. Property damage liability is limited to $5,000 per accident.

Eanes were never served in that action,[5] apparently because the Folands were able to collect under the uninsured motorist provision of their own automobile policy issued by Fireman's Fund Insurance Company. As a result, Fireman's filed a subrogation action against the Eanes based on their payment to the Folands of an amount in excess of $28,000. When notified of the Fireman's suit, Foremost refused to defend and again cited the territorial limitation clause, this time in reference to the liability coverage of the policy. It then filed this action for declaratory relief to confirm its interpretation of the policy's inapplicability. The court below agreed, and entered judgment in favor of Foremost.

## II

The issue in this case focuses on whether the facts give rise to potential coverage under the Foremost policy, obligating Foremost to defend the Eanes against the Fireman's subrogation action. The Eanes proffer three different theories under which Foremost might be obligated to indemnify the Eanes for any liability resulting from the Fireman's suit.

### A.

The Eanes first argue that the word "accident" in the territorial limitation clause (see *ante*, p. 569) is ambiguous and undefined within the context of the policy, which requires ascertainment of the reasonable expectations of the insured as to the extent of coverage. (See *Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335].) They go on to point to two cases which have held it was reasonable for the insured to expect that "accident" referred not just to the injury-causing event (e.g., collision, explosion, etc.) but also included the negligent or wrongful act of the insured which constituted the legal cause of the injury. Thus, where the insured's negligent manufacture of drilling mud in Los Angeles caused the mud to burst into flame while being stored in a warehouse in Venezuela, the "accident" occurred in Los Angeles within the policy's "continental United States" limitation. (*Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594].) And where a mechanic's negligence caused a vehicular collision five months later, the "accident" occurred during the servicing of the vehicle before

---

[5]When notified of the Folands' action, Foremost initially indicated it would defend on behalf of the Eanes, but specifically reserved its right to contest the applicability of the policy at a later date.

the insurance policy expired. (*Sylla v. United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38].)

We have no quarrel with the basic proposition that use of the word "accident," if undefined in the policy, may create some degree of ambiguity in certain circumstances necessitating ascertainment of the insured's reasonable expectations. (See generally *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-270 [54 Cal.Rptr. 104, 419 P.2d 168].) But abstract ambiguity is not an authorization to ignore common sense. The insured's expectations of coverage must be *reasonable.* In order for this policy to provide coverage under the facts of this case, the "accident" must be viewed as having occurred at the Eanes' home in Orange County when they loaned their vehicle to the Hortons and the Folands. To argue that the loan of the vehicle constituted *the* "accident" in this case strains credulity. "Accident" suggests a negative unexpected occurrence. (See *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563-564.) While a manufacturing defect (see *Oil Base, supra*, 271 Cal.App.2d 378) or a negligent repair (see *Sylla, supra*, 54 Cal.App.3d 895) may conceivably fit within this rubric, the intentional loaning of a vehicle to friends does not. This is especially true if there is no owner negligence involved and liability is premised on the strict liability provisions of Vehicle Code section 17150. Under such circumstances, we find it impossible to view the totally expected and totally reasonable actions of the vehicle owner as constituting an "accident" within the meaning of the policy.

We also note that the *Oil Base* and *Sylla* decisions have been severely criticized. In *Maples v. Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 647-650 [148 Cal.Rptr. 80], the court concerned itself with a negligently installed residential heater which caused a fire almost four years after the installer's insurance policy expired. That policy contained a provision limiting coverage to "accidents which occur during the policy period . . . ." After considering numerous California cases bearing on the issue, the court concluded as follows:

"Review of [the] seemingly unbroken line of authority finding that the term 'accident' unambiguously refers to the event causing damage, not the earlier event creating the potential for future injury, leads to the question of how the courts in *Oil Base* and *Sylla* were able to reach results contradicting this line of authority. Neither *Oil Base* nor *Sylla* acknowledges any of the above-cited California or out-of-state authorities, which strongly suggest, that they were not briefed or argued." The

court then emphasized that the fact that the word "accident" may be ambiguous in some contexts does not make it ambiguous in all:

"The rule of *Oil Base* and *Sylla* is acceptable only if it can truly be said that a person buying insurance to cover 'accidents' occurring during the term of the policy would reasonably conclude that the policy would apply to any damage or injury occurring in the future because of a negligent act during the policy period. The fact that there may be ambiguity in the question of whether a collision with two cars is one accident or two accidents [see *Hyer v. Inter-Insurance Exchange etc.* (1926) 77 Cal.App. 343 (246 P. 1055)], or the question of whether malicious prosecution is an accident [see *Maxon v. Security Ins. Co.* (1963) 214 Cal.App.2d 603 (29 Cal.Rptr. 586)], or whether damage done by a defective door is an accident [see *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., supra,* 51 Cal.2d 558] does not mean that there is ambiguity in the question of whether the term 'accident' means the negligent installation of a heater or the fire six years later attributed to the negligent installation, which is our case at bench. Accepted popular, as well as legal definition, would call the latter event the 'accident.'"

We accordingly conclude that the policy's use of the word "accident" does not create an ambiguity in the context of the facts presented by this case. The Eanes could not reasonably have expected coverage from this policy for liability arising out of a vehicular collision in Mexico. (See generally *California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056].)

## B.

The Eanes next contend that the exclusionary effect of the territorial limitation clause is not "phrased in clear and unmistakable language." (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick, supra,* 17 Cal.3d 190, 194; see also *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 236 [178 Cal.Rptr. 343, 636 P.2d 32].) They argue that the size and type of print did not serve to alert the insured as to the limitations on coverage. (See *Miller v. Elite Ins. Co.* (1980) 100 Cal. App.3d 739, 752 [161 Cal.Rptr. 322].) We cannot agree. The title of the clause—"Policy Period, Territory, Purposes of Use"—was set off in bold face type and adequately indicated that the ensuing language would define the policy's territorial application. The first five words of the sentence—"This policy applies only to . . ."—clearly inform the in-

sured that the clause is limiting coverage under the policy. We do not view the phrasing and/or physical layout of the clause as precluding its enforcement.

### C.

The Eanes finally point to Foremost's payment of the property damage claim and initial indication it would defend the Eanes as constituting a waiver of any right Foremost might have to deny coverage under the policy. (See generally *Scott v. Federal Life Ins. Co.* (1962) 200 Cal.App.2d 384, 391 [19 Cal.Rptr. 258].) As to the intended provision of a defense to the Folands' complaint, Foremost never in fact defended the Eanes since the complaint was never served, and in any case, Foremost's communication to the Eanes explicitly reserved all its rights to contest the policy's applicability. (See *ante,* fn. 5.)

Foremost defends its payment of the property damage claim as being required under a separate "loss payable" indorsement to the policy providing for payment to the loss payee despite any "act or neglect" by the owner. Foremost suggests that the "loss payable" provision was designed so that the Eanes' decision to lend the motor home to persons who planned to drive into Mexico could not deprive the bank-lender of its security on the loan. Regardless of whether the "loss payable" provision required payment for the property damage claim despite the territorial limitations clause, we think the waiver principle is simply inapplicable here. Foremost's explanation establishes that it did not intend to relinquish its rights, and given the reasonableness of its interpretation of the "loss payable" clause, Foremost's conduct was not "inconsistent with the intent to enforce the right[s]." (*Scott v. Federal Life Ins. Co., supra,* 200 Cal.App.2d at p. 391.)

*Disposition*

The judgment is affirmed.

Cologne, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied July 13, 1982, and appellants' petition for a hearing by the Supreme Court was denied September 29, 1982.