Filed 6/4/18

# IN THE SUPREME COURT OF CALIFORNIA

LIBERTY SURPLUS INSURANCE )
CORPORATION et al., )
)
      Plaintiffs and Respondents, )
)            S236765
)
      v. )
)     9th Cir. No. 14-56120
LEDESMA & MEYER )
CONSTRUCTION COMPANY, INC., )
et al., )
)
      Defendants and Appellants. )
_____ )

Here we consider a question of California insurance law posed by the United States Court of Appeals for the Ninth Circuit: When a third party sues an employer for the negligent hiring, retention, and supervision of an employee who intentionally injured that third party, does the suit allege an "occurrence" under the employer's commercial general liability policy? (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.* (9th Cir. 2016) 834 F.3d 998, 1000.)[1] The answer turns on whether the injury can be considered "accidental." We conclude that it can.

---

[1] We have rephrased the question slightly. (See Cal. Rules of Court, rule 8.548(f)(5).)

SEE CONCURRING OPINION

## I. BACKGROUND

Appellants Ledesma & Meyer Construction Company, Inc. and its principals, Joseph Ledesma and Kris Meyer (collectively, L&M) contracted with the San Bernardino Unified School District to manage a construction project at a middle school. In 2003, L&M hired Darold Hecht as an assistant superintendent and assigned him to the project. In 2010, Jane Doe, a 13-year-old student at the school, sued in state court alleging that Hecht had sexually abused her. Doe's claims include a cause of action against L&M for negligently hiring, retaining, and supervising Hecht.

L&M tendered the defense to its insurers, Liberty Surplus Insurance Corporation and Liberty Insurance Underwriters, Inc. (collectively, Liberty). Liberty defended L&M under a reservation of rights. It also sought declaratory relief in federal court, contending it had no obligation to defend or indemnify L&M. The commercial general liability policy at issue provided coverage for " 'bodily injury' " "caused by an 'occurrence.' " "Occurrence" was defined as "an accident."[2] The district court granted summary judgment to Liberty on the cause of action for negligent hiring, retention, and supervision.

---

[2]     In a section titled "Insuring Agreement," the policy stated:
"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply. . . .
"b. This insurance applies to 'bodily injury' and 'property damages' only if:
        "(1) The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ."
        In the "Definitions" section, the policy stated: " 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The court reasoned that Doe's injury was not caused by an "occurrence" because the "alleged negligent hiring, retention and supervision were acts antecedent to the sexual molestation . . . . While they set in motion and created the potential for injury, they were too attenuated from the injury-causing conduct committed by Hecht." The court was not persuaded by the argument that L&M's supervision and retention of Hecht continued until the time of the molestation. "First, the supervision and retention are still not the injury-causing acts. Second, courts have rejected the argument that the insured's intentional acts of hiring, supervising, and retaining are accidents, simply because the insured did not intend for the injury to occur."

On appeal, L&M argued that the district court misapplied California law. The Court of Appeals sought our opinion. As we explain, L&M's position is correct.

## II. DISCUSSION

As a general matter, the meaning of the term "accident" in a liability insurance policy is settled in California. "[A]n accident is ' "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." ' [Citations.] 'This common law construction of the term "accident" becomes part of the policy and precludes any assertion that the term is ambiguous.' " (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 308 (*Delgado*).) "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the *conduct of the insured* for which liability is sought to be imposed . . . ." (*Id.* at p. 311, italics added.) "[T]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence (Black's Law Dict. [(5th ed. 1979)] at p.

3

14, col. 2) . . . ."**3** (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 765 (*Safeco*).) Accordingly, a policy providing a defense and indemnification for bodily injury caused by " 'an accident' " "promise[s] coverage for liability resulting from the *insured's* negligent acts." (*Ibid*, italics added.)**4**

Here, the question is whether Liberty had a duty to defend L&M against Doe's lawsuit. "To prevail in an action seeking declaratory relief on the question of the duty to defend, 'the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.' [Citation.] The duty to defend exists if the insurer 'becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.' " (*Delgado*, *supra*, 47 Cal.4th at p. 308, quoting *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19.)

It is important to keep in mind that a cause of action for negligent hiring, retention, or supervision seeks to impose liability on the employer, not the employee. The district court appeared to recognize that in analyzing the potential for coverage, the focus is properly on the alleged negligence of L&M as the insured employer. It is undisputed that Hecht's sexual misconduct was a "wilful act" beyond the scope of insurance coverage under Insurance Code section 533. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1025.) However,

---

**3** As explained in the dictionary cited by the *Safeco* court, any kind of fortuitous event may be considered an "accident." The legal elements of the tort of negligence delineate a narrower set of circumstances.

**4** The homeowners policy at issue in *Safeco*, like the homeowners policy in *Delgado* and the commercial general liability policy in this case, contemplated a defense and indemnification for bodily injury caused by " 'an occurrence,' " defined in the policy as " 'an accident.' " (*Delgado*, *supra*, 47 Cal.4th at p. 308; *Safeco*, *supra*, 26 Cal.4th at pp. 764-765.)

4

Hecht's intentional conduct does not preclude potential coverage for L&M. We noted the distinction between an intentional act of molestation and merely negligent supervision in *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315 (*Minkler*). There the plaintiff sued his Little League coach for sexual molestation. He also sued the coach's mother, whom he accused of negligent supervision for failing to prevent molestations that occurred in her home. The coach was listed as an additional insured on his mother's homeowners insurance policy. We held that an exclusion for injuries arising from an insured's intentional acts did not apply to the mother's liability for negligence. "[T]his is not a situation where the only tort was the intentional act of one insured, and where the liability of a second insured, who claims coverage, is merely *vicarious* or *derivative*. On the contrary, [the plaintiff's] claim against [the mother] clearly depends upon allegations that she herself committed an *independent tort* in failing to prevent acts of molestation she had reason to believe were taking place in her home. Under such circumstances, she had objective grounds to assume she would be covered, so long as she herself had not acted in a manner for which the intentional acts exclusion barred coverage." (*Id*. at p. 325.)

In *Minkler* we did not consider whether the claims involved were "accidents" under the applicable insurance policies, because the issue was not raised. (*Minkler*, *supra*, 49 Cal.4th at p. 322, fn. 3.) But our reasoning there establishes that L&M may be covered even though Hecht's intentional acts were beyond the scope of its policy. L&M's allegedly negligent hiring, retention, and supervision were independently tortious acts, which form the basis of its claim against Liberty for defense and indemnity. The district court's ruling was consistent with *Minkler*. It did not rely on the fact that Hecht's conduct was intentional, but on two other grounds: a causation analysis, and the court's reading of case law. Both lines of reasoning were faulty.

5

As to liability insurance coverage, tort principles govern the question of causation. "In analyzing coverage under a liability policy, a 'tort approach' [citation] to causation of damages is precisely what is called for . . . . When the insurer has promised to indemnify the insured for all 'sums which the Insured shall become obligated to pay . . . for damages . . . because of' nonexcluded property damage, or similar language, coverage necessarily turns on whether the damages for which the insured became liable resulted — *under tort law* — from covered causes." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1035 (*Allstate*).) This rule applies with equal force to a policy covering liability for personal injury. (See *Delgado*, *supra*, 47 Cal.4th at p. 315.)

Causation is established for purposes of California tort law if the defendant's conduct is a "substantial factor" in bringing about the plaintiff's injury. (*Allstate*, *supra*, 45 Cal.4th at p. 1036; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968-969; see Judicial Council of Cal., Civ. Jury Instns. (2018) CACI Nos. 400, 430.) The district court ruled that L&M's alleged negligence was, as a matter of law, "too attenuated" from Hecht's acts of molestation. It reasoned that L&M's actions set the chain of events in motion but did not legally cause Doe's injuries. That reasoning runs counter to California cases expressly recognizing that negligent hiring, retention, or supervision may be a substantial factor in a sexual molestation perpetrated by an employee, depending on the facts presented. (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 876; *Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 835; cf. Rest.3d of Agency, § 7.05; Rest.2d of Agency, § 213.)[5]

_____

**5** We note that the jury instructions issued by our Judicial Council include "substantial factor" causation as an element of the tort of negligent hiring, retention, or supervision. The fifth element listed in CACI No. 426 is "[t]hat [name of employer defendant]'s negligence in [hiring/ supervising/ [or] retaining]

6

Indeed, molestation was the alleged cause of injury in a significant number of cases based on negligent hiring, retention, or supervision.[6]

The district court further relied on case law to reject the idea that L&M's "intentional acts of hiring, supervising, and retaining [Hecht] are accidents, simply because the insured did not intend for the injury to occur." The court cited a number of authorities, including *Delgado*, *supra*, 47 Cal.4th 302. There, the insured was sued for assault and battery. As part of a settlement, he assigned his claim against his homeowners insurer to the injured party, Delgado. Delgado urged that the attack was an "accident" from his point of view because he did not expect or intend to be assaulted. We rejected the premise of this argument. "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of *the insured* for which liability is sought to be imposed on the insured." (*Delgado*, at p. 311, italics added.) Because liability insurance is a contract between insurer and insured, and the policy is read in light of the parties' expectations, the relevant viewpoint is that of the insured rather than the injured party. (*Ibid.*)

---

[name of employee] *was a substantial factor in causing* [*name of plaintiff*]*'s harm*." (Italics omitted and added.)

CACI No. 426 is consistent with California case law on the causation element of Doe's claim against L&M. (See *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 [jury instructions are not themselves legal authority, but may accurately reflect the state of the law].)

[6] In addition to the *C.A.* and *Evan F.* cases cited above, see *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 453; *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 591; *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889, 902; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054; *Roman Catholic Bishop v. Superior Court* (1996) 42 Cal.App.4th 1556, 1564-1565; *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1855.

The district court referred to pages 315 and 316 of the opinion in *Delgado*, *supra*, 47 Cal.4th. There we addressed Delgado's further contention that the attack was accidental because the insured unreasonably believed he was required to act in self-defense. We disagreed, holding that such a belief could not convert the assault, an act that was purposeful and intended to inflict injury, into an accidental occurrence. We emphasized that the acts of the insured "must be considered the starting point of the causal series of events, not the injured party's acts . . . . The term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured, not those of the injured party. [Citations.] In determining whether the injury is a result of an accident, taking into consideration acts or events before the insured's acts would be illogical and contrary to California case law. [¶] 'Any given event, including an injury, is always the result of many causes.' (1 Dobbs, The Law of Torts (2001) § 171, p. 414.) For that reason, the law looks for purposes of causation analysis 'to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.' (Prosser & Keeton on Torts (5th ed. 1984) § 41, p. 264.) In a case of assault and battery, it is the use of force on another that is closely connected to the resulting injury. To look to acts within the causal chain that are antecedent to and more remote from the assaultive conduct would render legal responsibilities too uncertain." (*Delgado*, *supra*, 47 Cal.4th at pp. 315-316.)

In *Delgado*, the insured's intentional tortious conduct was the immediate cause of injury. Here, Hecht's molestation was the act directly responsible for the injury, while L&M's negligence in hiring, retaining, and supervising him was an indirect cause. Nevertheless, *Delgado*'s analysis is applicable to our scenario, and supports L&M's position. We noted in *Delgado* that an injury may be the result of more than one cause. (*Delgado*, *supra*, 47 Cal.4th at p. 315.) As discussed above, a finder of fact could conclude that the causal connection between L&M's alleged

8

negligence and the injury inflicted by Hecht was close enough to justify the imposition of liability on L&M. Under *Delgado*, L&M's acts must be considered the starting point of the series of events leading to Doe's molestation. L&M does not rely on any event preceding its own negligence to establish potential coverage. As alleged by Doe, the " 'occurrence resulting in injury' " began with L&M's negligence and ended with Hecht's act of molestation. (*Id.* at p. 316.)[7]

The district court also cited *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41 (*Merced*). The insured in *Merced* was sued for sexual assault. He claimed his conduct could be considered an "accident" because he mistakenly believed the victim had consented. He conceded that he intentionally engaged in the sexual conduct, but urged that he intended no injury. (*Merced*, at pp. 48, 51.) The court declined to recognize such a minimalist understanding of the term "accident." It explained that "[a]n accident . . . is never present when the insured performs a deliberate act *unless* some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Id.* at p. 50, italics added.) In *Merced*, "[a]ll of the acts, the manner in which they were done, and the objective accomplished occurred exactly as [the insured] intended. No additional, unexpected, independent or unforeseen act occurred." (*Ibid.*)

The district court's reliance on *Merced* was misplaced because it is distinguishable. First, *Merced* did not involve a claim of negligent hiring, retaining, or supervising. Instead, the intentional acts of the insured himself caused the alleged injury. Second, the argument in support of coverage here is different from the one rejected in *Merced*. There, the insured acknowledged that he intended the acts that caused the injury, but not the injury. Here, L&M argues

---

[7] Any claim alleging negligent hiring by an employer will be based in part on events predating the employee's tortious conduct. Plainly, that sequence of events does not itself preclude liability.

9

that Hecht's acts were neither intended nor expected from its perspective. Thus, *Merced* provides no support for the district court's conclusion that L&M's negligent hiring, retention, and supervision of Hecht cannot be an accident. That said, *Merced*'s definition of what constitutes an accident is consistent with *Delgado*, and actually favors L&M.**8** Even though the hiring, retention, and supervision of Hecht may have been "deliberate act[s]" by L&M, the molestation of Doe could be considered an "additional, unexpected, independent, and unforeseen happening . . . that produce[d] the damage." (*Merced*, *supra*, 213 Cal.App.3d at p. 50.)

The district court also relied on *Foremost Insurance Co. v. Eanes* (1982) 134 Cal.App.3d 566 (*Foremost*), but that case is inapposite. The *Foremost* court considered the meaning of the term "accident" appearing in a territorial limitation clause, not a coverage clause. The insureds had loaned a vehicle to friends in Orange County, and the vehicle was involved in a collision in Mexico. The court concluded as a matter of "common sense" that the " 'accident' " occurred in Mexico for purposes of the territorial limitation. (*Id.* at p. 571.) Here, however, we are not concerned with *where* the accident occurred but with *whether* there was an "accident" within the scope of the policy language. For that purpose, "[t]he term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured . . . ." (*Delgado*, *supra*, 47 Cal.4th at p. 315.)

Another case cited by the district court, *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease* (N.D.Cal. 1991) 756 F.Supp. 1287 (*American Empire*), is also inapposite. There, the insured taxi cab company sought property

---

**8** The concurring opinion agrees with *Merced*'s formulation of what constitutes an accident, but concludes that *Merced*'s "application of the law [was] mistaken." (Conc. opn., *post*, at p. 6.) The question whether *Merced* was correctly decided is, of course, not before us here.

insurance coverage for a child molestation committed by one of its drivers at a school. (*Id*. at p. 1288.) The relevant policy language covered bodily injury "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto." (*Id*. at p. 1289, boldface omitted.) The court observed, "[i]t seems clear that this language was intended to address the typical 'slip and fall' case and was not intended to protect against liability for any and all occurrences which could conceivably arise out of an insured's 'use' of its premises. Otherwise, this concededly narrower form of insurance could be extended to cover all aspects of an insured's business operations. Nearly all acts could be said to 'arise out of the use of the insured premises' in the sense that all business actions either directly originate from or are ultimately attributable to the 'head office.' If Cab Co. had wanted to be insured against liability for acts committed by its drivers while off company premises it could have purchased a comprehensive general liability policy." (*Ibid*.) Here, L&M did purchase a comprehensive general liability policy. *American Empire* is also distinguishable because the policy in that case expressly excluded damages arising from assault. (*Id*. at p. 1290.)

A brief discussion in *American Empire* concludes, in dicta, that negligent hiring cannot be an "accident." (*American Empire*, *supra*, 756 F.Supp. at p. 1290.) The discussion is erroneous. The court relied on *Foremost*, *supra*, 134 Cal.App.3d 566, which is not on point for the reasons noted. It also cited two cases addressing whether an injury that occurs after expiration of the policy period may be considered the result of a covered "accident" because the insured's negligent acts took place during the policy period. In *State Farm Mut. Auto. Ins. Co. v. Longden* (1987) 197 Cal.App.3d 226, 233 (*Longden*), the court held that while a "potential" for liability arose as a result of the insured's negligence, there was no "accident" until the claimant was injured. Similarly, in *Maples v. Aetna*

11

*Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 647-648 (*Maples*), another trigger-of-coverage case, the court said that "the term 'accident' unambiguously refers to the event causing damage, not the earlier event creating the potential for future injury . . . ."

*Longden* and *Maples* are based on the unremarkable proposition that an "accident" does not occur until there is an injury. Their reasoning as to negligence creating a mere potential for damage is relevant in determining whether an "accident" occurred during the period of an insurance policy's coverage. But when damage is inflicted during the policy period, those cases do not support a finding against coverage for the insured's earlier negligent conduct. Accordingly, the *American Empire* court incorrectly applied *Longden* and *Maples* to conclude that alleged negligent hiring "merely created the potential for injury . . . but was not itself the cause of the injury." (*American Empire*, *supra*, 756 F.Supp. at p. 1290.) The district court in this case similarly erred by relying on *Longden* and *Maples* to find that "California courts have consistently drawn a distinction between the immediate circumstances that inflict injury, and the preceding negligence that sets in motion the chain of events leading to that injury."[9]

A focus on the immediate cause of injury was appropriate for purposes of the territorial limitation in *Foremost* and the trigger-of-coverage issue in *Longden* and *Maples*. (*Foremost*, *supra*, 134 Cal.App.3d at p. 571; *Longden*, *supra*, 197 Cal.App.3d at p. 233; *Maples*, *supra*, 83 Cal.App.3d at pp. 647-648.) However, we have long recognized that "[n]o all-inclusive definition of the word 'accident'

---

[9]    The reasoning in *Farmer v. Allstate Ins. Co.* (C.D.Cal. 2004) 311 F.Supp.2d 884, 892-893, is also faulty. There, the court concluded that a daycare operator was not entitled to liability coverage for negligent supervision of her husband, who molested a child in the operator's care. The *Farmer* court, like the *American Empire* court and the district court here, mistakenly relied on *Longden* and *Maples*.

12

can be given." (*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 (*Geddes*); see *Delgado*, *supra*, 47 Cal.4th at p. 309; *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 559 (*Hogan*).)  Context matters in this area of the law.  (See *Delgado*, at pp. 309, 313, 315.)  Factors relevant to the application of a territorial limitation clause or the resolution of a dispute over whether an accident occurred during the policy period are not necessarily pertinent to all coverage questions.

Liberty marshals additional authority in an attempt to rule out coverage for L&M, but the attempt fails.  *Geddes* was the case from which the *Delgado* court drew its definition of "accident" as " ' "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." ' " (*Delgado*, *supra*, 47 Cal.4th at p. 308, quoting *Geddes*, *supra*, 51 Cal.2d at pp. 563-564.)  *Geddes* held that a supplier of aluminum doors was entitled to insurance coverage for liability stemming from doors that failed unexpectedly after installation.  Liberty contends the *Geddes* court's emphasis on the suddenness of the door failures establishes that damage is only covered if it is accidental at the time it occurs.  (See *Geddes*, at p. 564.)  To the extent *Geddes* can be read to support such a rule, it does not help Liberty.  At the time Doe was molested, from L&M's point of view the event could have been " 'an unexpected, unforeseen, or undesigned happening or consequence' " of its hiring, retention, or supervision of Hecht.  (*Geddes*, at p. 563; see *Delgado*, at p. 309.)[10]

Liberty also relies on *Hogan*, *supra*, 3 Cal.3d 553.  There, a manufacturer sold a saw that did not cut lumber to the proper dimensions.  When a customer

---

[10]    As Liberty acknowledges, language in *Geddes* considering whether an event is "accidental" from the standpoint of the person injured was discredited by *Delgado*, which made it clear that the relevant perspective is that of the insured. (*Delgado*, *supra*, 47 Cal.4th at p. 309; *Geddes*, *supra*, 51 Cal.2d at p. 563.)

sued, the manufacturer sought coverage from its insurance carrier. The *Hogan* court recognized that the policy covered lumber the saw cut too narrowly. However, it held that coverage did not extend to lumber the customer deliberately cut wide to compensate for the saw's imprecision. (*Id*. at pp. 559-560.) According to Liberty, *Hogan* establishes that there is no coverage for an "accident" if the injury-producing conduct is deliberate. *Hogan*, however, did not involve an insured's independent tort liability for damage deliberately caused by another *tortfeasor*, like Hecht in this case. (Cf. *Minkler*, *supra*, 49 Cal.4th at p. 325.) The deliberate acts in *Hogan* were committed by the *injured third party*: the customer who elected to cut lumber wider than was required. Here, Doe is the injured third party, and her conduct is not at issue. Under the principles discussed in *Minkler* and *Delgado*, Hecht's molestation of Doe may be deemed an unexpected consequence of L&M's independently tortious acts of negligence. *Hogan*'s holding does not apply.[11]

We recognize society's interest in providing an incentive for employers to take precautions against sexual abuse by their employees. However, the threat of liability for negligent hiring, retention, and supervision is a significant deterrent even when insurance coverage is available. We also acknowledge that insurance does not generally cover intentionally inflicted injuries. But as noted in *Minkler*, "the public policy against insurance for one's own intentional sexual misconduct

---

[11]     We acknowledge that *Hogan* stands in some tension with *Delgado*'s declaration that the term "accident" in an insurance policy "refers to the injury-producing acts of the insured, not those of the injured party." (*Delgado*, *supra*, 47 Cal.4th at p. 315.) Arguably, the *Hogan* customer's intentional act of cutting lumber wider than required would have been an unexpected consequence from the perspective of the insured saw manufacturer. (See *id*. at p. 309.) However, deliberate acts by an injured claimant present a number of considerations that do not pertain to deliberate injurious acts by an employee. Given the factual dissimilarities between this case and *Hogan*, we have no occasion to revisit its holding here.

14

does not bar liability coverage for others whose mere negligence contributed in some way to the acts of abuse.  In such cases . . . there is no overriding policy reason why a person injured by sexual abuse should be denied compensation for the harm from insurance coverage purchased by the negligent facilitator." (*Minkler*, *supra*, 49 Cal.4th at p. 327, fn. 4.)

Liberty's arguments, if accepted, would leave employers without coverage for claims of negligent hiring, retention, or supervision whenever the employee's conduct is deliberate.  Such a result would be inconsistent with California law, which recognizes the cause of action even when the employee acted intentionally.[12]  The requirements for liability of this kind are not easily met, but they are well established.[13]  Absent an applicable exclusion, employers may legitimately expect coverage for such claims under comprehensive general liability insurance policies, just as they do for other claims of negligence.

---

[12]     See the molestation cases cited on pages 6 and 7, *ante*, and also *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139 (murder), *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 (cyber harassment), and *Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339-1340 (wrongful death).

[13]     The evidence was found insufficient in *Z.V. v. County of Riverside*, *supra*, 238 Cal.App.4th at pages 903-904; *Delfino v. Agilent Technologies, Inc.*, *supra*, 145 Cal.App.4th at page 815; *Doe v. Capital Cities*, *supra*, 50 Cal.App.4th at pages 1054-1055; and *Roman Catholic Bishop v. Superior Court*, *supra*, 42 Cal.App.4th at pages 1565-1568.  In *Phillips v. TLC Plumbing, Inc.*, *supra*, 172 Cal.App.4th at pages 1141-1145, the court held that liability did not extend to injuries inflicted by a former employee.  In *Mendoza v. City of Los Angeles*, *supra*, 66 Cal.App.4th at page 1341, there was no liability for injury inflicted by an off-duty employee in his home.  And in *Evan F. v. Hughson United Methodist Church*, *supra*, 8 Cal.App.4th at pages 837-838, the employer was not responsible for a molestation committed by a third party who had been molested by an employee.

                                                CORRIGAN, J.


        WE CONCUR:

        CANTIL-SAKAUYE, C. J.
        CHIN, J.
        CUÉLLAR, J.
        KRUGER, J.
        BIGELOW, J. *


_____

*       Presiding Justice of the Court of Appeal, Second Appellate District,

Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of

the California Constitution.

16

**CONCURRING OPINION BY LIU, J.**


In this case, an employee of Ledesma & Meyer Construction Company, Inc. (L&M), Darold Hecht, committed sexual acts against a 13-year-old student, Jane Doe, at a school where Hecht was working on a construction project undertaken by L&M. Doe sued L&M, among others, and L&M tendered its defense to its insurer Liberty Surplus Insurance Corporation, with whom L&M had a commercial general liability policy. The question is whether that suit alleges an "occurrence" under L&M's commercial general liability policy. I agree with today's opinion that the answer is yes, but I write separately to clarify three aspects of the understanding of an "accident."

## I.

The insurance policy in this case provides that "[t]his insurance applies to 'bodily injury' and 'property damages' only if: [¶] (1) The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ." In the "Definitions" section of the policy, the term " 'Occurrence' " is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, the question of coverage turns on whether the injury to Doe was the result of an "accident" caused by L&M and more generally whether, when an employee intentionally causes injury to a third party, that injury can be considered accidental if it was caused by the employer's negligent hiring,

retention, or supervision of the employee.  Today's opinion holds that such injury can be caused by accident.

In support of this result, the court starts with the commonsense definition in *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 308 (*Delgado*):  "[A]n accident is ' "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." ' "  (See maj. opn., *ante*, at p. 3.)  However, the court further states, " 'Under California law, the word "accident" in the coverage clause of a liability policy refers to the *conduct of the insured* for which liability is sought to be imposed . . . .' "  (*Ibid.*, quoting *Delgado*, at p. 311.)  This formulation conflates the term "accident" with the conduct that eventually and proximately causes injury.  In this case, L&M's hiring, supervising, and retaining Hecht were not "accidents"; those were deliberate, intentional acts.  It was Hecht's sexual abuse of the victim and resulting injury that comprised the accident, from L&M's perspective.  In other words, because Hecht's actions and the injury to the victim were " ' "unexpected, unforeseen, or undesigned happening[s] or consequence[s]" ' " from L&M's perspective, they were accidents in the context of providing insurance for L&M.  (*Delgado*, at p. 308.)  Thus, in a liability insurance policy, an "accident" does not necessarily refer to the conduct of the insured; rather, it is an " ' "unexpected, unforeseen, or undesigned happening or consequence" ' " *resulting from* the conduct of the insured.

This understanding of "accident" is consistent with the court's answer to the question presented.  Under the commercial general liability policy at issue, there is coverage for bodily injury so long as "[t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory.' "  Thus, if an insured's conduct in negligent hiring, retention, or supervision of its employee results in an accident that causes bodily injury, that injury is covered by the insurance policy.

2

## II.

The court addresses a number of cases cited by the federal district court, which arrived at a contrary answer to the question presented. One such case is *Delgado*, *supra*, 47 Cal.4th 302, in which the insured was sued for assault and battery. (Maj. opn., *ante*, at pp. 7–9.) In that case, as part of a settlement, the insured assigned his claim against his homeowner's insurer to the injured party, Jonathan Delgado. Delgado argued that the attack was accidental because the insured unreasonably believed he was required to act in self-defense. We rejected this argument, holding that such belief could not convert the assault, an act that was purposeful and intended to inflict injury, into an accidental occurrence. In so doing, *Delgado* stated that the acts of the insured "must be considered the starting point of the causal series of events, not the injured party's acts . . . . The term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured, not those of the injured party. [Citations.] In determining whether the injury is a result of an accident, taking into consideration acts or events before the insured's acts would be illogical and contrary to California case law. [¶] 'Any given event, including an injury, is always the result of many causes.' (1 Dobbs, The Law of Torts (2001) § 171, p. 414.) For that reason, the law looks for purposes of causation analysis 'to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.' (Prosser & Keeton on Torts (5th ed. 1984) § 41, p. 264.) In a case of assault and battery, it is the use of force on another that is closely connected to the resulting injury. To look to acts within the causal chain that are antecedent to and more remote from the assaultive conduct would render legal responsibilities too uncertain." (*Delgado*, at pp. 315–316.)

Today's opinion says *Delgado*'s analysis is applicable, reasoning that "a finder of fact could conclude that the causal connection between L&M's alleged negligence and the injury inflicted by Hecht was close enough to justify the imposition of liability

3

on L&M." (Maj. opn., *ante*, at p. 9.) "Under *Delgado*, L&M's acts must be considered the starting point of the series of events leading to Doe's molestation. L&M does not rely on any event preceding its own negligence to establish potential coverage. As alleged by Doe, the ' "occurrence resulting in injury" ' began with L&M's negligence and ended with Hecht's act of molestation." (Maj. opn., *ante*, at p. 9.)

Although I agree that a factfinder could conclude that the causal connection was close enough to justify imposing liability on L&M, I would not ground this conclusion on *Delgado*'s analysis. It is incorrect that "[i]n determining whether the injury is a result of an accident, taking into consideration acts or events before the insured's acts would be illogical and contrary to California case law." (*Delgado*, *supra*, 47 Cal.4th at p. 315.) There are myriad situations where we would examine prior events to determine whether an insured's acts resulted in an accidental injury. For example, suppose an insured driver steps on the accelerator because a passenger spilled coffee on the driver and as a result the car hits another car and causes injury to its occupants. In determining whether the injury was accidental, we would of course look to the act of the coffee-spilling passenger, even though the passenger was not the insured. Indeed, any time a motorist takes evasive action due to some situation on the road and thereby causes injury, we would consider that situation — a prior event — in determining whether there was an "accident." (See, e.g., *Davilla v. Liberty Life Ins. Co.* (1931) 114 Cal.App. 308, 313–316 [finding a result of "accidental means" where insured motorcyclist encountered a stalled vehicle and then deliberately swerved to avoid it and consequently hit his head on the stalled vehicle].)

Even in an alleged self-defense case like *Delgado*, it is not clear why the acts of the injured party preceding the insured's actions are irrelevant to whether the injury was an accident. Consider another example: In a crowded bar, a patron trips and falls with his arms outstretched resembling a punching motion. An employee sees this and

4

reactively, but intentionally, punches and injures the patron in a move of self-defense. In assessing whether this was accidental, we would obviously consider the patron's trip and fall, an event before the insured's act.

*Delgado* is correct that "the law looks for purposes of causation analysis 'to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.' " (*Delgado*, *supra*, 47 Cal.4th at p. 315, citing Prosser & Keeton on Torts, *supra*, § 41, p. 264.)  It is that principle that grounds today's holding that "a finder of fact could conclude that the causal connection between L&M's alleged negligence and the injury inflicted by Hecht was close enough to justify the imposition of liability on L&M." (Maj. opn., *ante*, at p. 9.)

### III.

Today's opinion also seeks to harmonize its holding with *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41 (*Merced*).  *Merced* held that no accident occurred when an insured sexually assaulted a victim whom the insured claimed to have honestly believed had consented to sexual activity.  (*Id.* at p. 50.) The court stated:  "An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.  [Citation.]  Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident.  Moreover, where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury.  Conversely, an 'accident' exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (*Ibid.*)  The Court of Appeal then stated that in that case there was no "additional, unexpected, independent or unforeseen act" that occurred and hence there was no accident. (*Ibid.*)  Today's opinion says *Merced* favors finding that Doe's injury was an

5

accident caused by L&M's conduct because Hecht's molestation of Doe was an
" 'additional, unexpected, independent, and unforeseen happening' " that
" 'produce[d] the damage.' " (Maj. opn., *ante*, at pp. 9–10, quoting *Merced*, at
p. 50.)

I agree that "[a]n accident . . . is never present when the insured performs a
deliberate act unless some additional, unexpected, independent, and unforeseen
happening occurs that produces the damage" (*Merced*, *supra*, 213 Cal.App.3d at
p. 50), and today's opinion is correct that finding Doe's injury was the result of an
accident caused by J&M's conduct is consistent with this language in *Merced*.
However, *Merced*'s application of the law is mistaken. If one were to accept the
insured's claim that he had an honest belief that the victim consented to the sexual
conduct, then the injury to the victim could be an " ' "unexpected, unforeseen, or
undesigned happening or consequence" ' " resulting from the insured's conduct.
(*Delgado*, *supra*, 47 Cal.4th at p. 308.) To use *Merced*'s language, there would be
an "aspect in the causal series of events leading to the injury or damage" —
namely, the fact that the victim was not consenting — that was "unintended by the
insured" and a "matter of fortuity" from the perspective of the insured. (*Merced*,
at p. 50.) The Court of Appeal's conclusion that there was "[n]o additional,
unexpected, independent or unforeseen act [that] occurred" (*ibid.*) overlooks the
fact that the insured claimed he did not realize that the victim was not consenting.

The result in *Merced* is better explained by the fact that the court implicitly
rejected the insured's contention that he honestly believed that the victim was
consenting. The court stated that "[a]ll of the acts, the manner in which they were
done, and the objective accomplished occurred exactly as [the insured] intended."
(*Merced*, *supra*, 213 Cal.App.3d at p. 50.) If the insured believed the victim to be
nonconsenting, then the insured's acts were intentional, not accidental, and no
insurance coverage would ensue. But insofar as *Merced* is understood to hold that

6

a mistake in apprehending another's consent (or lack thereof) can categorically never give rise to an accident, that is inconsistent with our law on the meaning of "accident."

In all other respects, I join the opinion of the court.

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Liberty Surplus Insurance Corporation v. Ledesma & Meyer Construction Company
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S236765
**Date Filed:** June 4, 2018
_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Defendants and Appellants.

Steven W. Murray as Amicus Curiae on behalf of Defendants and Appellants.

Kasowitz Benson Torres and Brian P. Brosnahan for Franciscan Friars of California, Inc., and Province of the Holy Name, Inc., as Amici Curiae on behalf of Defendants and Appellants.

Weinstein & Numbers, Barron L. Weinstein, Charles H. Numbers and Shanti Eagle for California Catholic Conference and Association of Christian Schools International as Amici Curiae on behalf of Defendants and Appellants.

Andrade Gonzalez, Sean A. Andrade, Stephen V. Masterson; Jones Day, David W. Steuber and Tara C. Kowalski for the Los Angeles Unified School District as Amicus Curiae on behalf of Defendants and Appellants.

IP Business Law and Antonio R. Sarabia II for National Center for Victims of Crime as Amicus Curiae on behalf of Defendants and Appellants.

Covington & Burling, David B. Goodwin, Michael S. Greenberg and Marienna H. Murch for United Policyholders as Amicus Curiae on behalf of Defendants and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Patrick Fredette and Christopher Ryan for Plaintiffs and Respondents.

Crowell & Moring and Brendan V. Mullan for Complex Insurance Claims Litigation Association and American Insurance Association as Amici Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jeffrey I. Ehrlich
The Ehrlich Law Firm
16130 Ventura Boulevard, Suite 610
Encino, CA  91436
(818) 905-3970

Patrick Fredette
McCormick, Barstow, Sheppard, Wayte & Carruth
7647 North Fresno Street
Fresno, CA  93720
(559) 433-1300