NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 26 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AIU INSURANCE COMPANY,<br><br>    Plaintiff-counterclaim-defendant,<br><br> and<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>    Plaintiff-counterclaim-<br>    defendant-Appellee,<br><br>  v.<br><br>MCKESSON CORPORATION, FKA McKesson HBOC, Inc.,<br><br>    Defendant-counterclaim-<br>    3rd-party-plaintiff-Appellant,<br><br>  v.<br><br>ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>    Third-party-defendant-Appellee. | No.   22-16158<br><br>D.C. Nos.   3:20-cv-07469-JSC<br>                3:20-cv-09356-JSC<br><br>MEMORANDUM* |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, District Judge, Presiding

Argued and Submitted January 10, 2024
San Francisco, California

Before: SILER,** CLIFTON, and M. SMITH, Circuit Judges.

McKesson Corporation appeals the district court's order granting partial summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, Pa., and ACE Property and Casualty Insurance Company (collectively, "Insurers"). During the relevant period, McKesson held policies issued by Insurers which covered any "Bodily Injury … caused by an Occurrence." An "occurrence" is defined in the policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Insurers sought a declaratory judgment that they had no duty to defend McKesson against litigation (the "Exemplar Suits") seeking to impose liability on McKesson for its alleged role in the opioid crisis. McKesson argues that the district court erred in finding that the Exemplar Suits did not allege an accident and thus Insurers had no duty to defend. The district court certified its order granting partial summary judgment for Insurers as final under Fed. R. Civ. P. 54(b), so we have jurisdiction under 28 U.S.C. § 1291. Because the parties are familiar with the facts,

_____

** The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

we do not recount them here, except as necessary to provide context to our ruling. We affirm.

Under California law, an insurer is obliged to defend any action brought against an insured "if the insurer becomes aware of, or if the third-party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 418 P.3d 400, 403 (Cal. 2018) (quotation omitted). "[T]he duty to defend is broader than the duty to indemnify," *Montrose Chem. Corp. v. Super. Ct.,* 861 P.2d 1153, 1157 (Cal. 1993), and "generally applies to the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered," *Presley Homes, Inc. v. Am. States Ins. Co.*, 108 Cal. Rptr. 2d 686, 689 (Cal. Ct. App. 2001). Because McKesson is entitled to coverage under Insurers' policies for any "Occurrence," defined as an accident, Insurers are obliged to defend if any claim in the Exemplar Suits alleges accidental conduct.

"[T]he meaning of the term 'accident' in a liability insurance policy is settled in California. An accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." *Ledesma*, 418 P.3d at 403 (quotation and alterations omitted). But "[a]n accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."

*Navigators Specialty Ins. Co. v. Moorefield Constr., Inc.,* 212 Cal. Rptr. 3d 231, 245 (Cal. Ct. App. 2016). Thus, our task is essentially a two-step inquiry: do the complaints in the Exemplar Suits allege anything other than strictly deliberate conduct? And if not, do they countenance "some additional, unexpected, independent, and unforeseen happening" which may have produced the damage? *See id.* We conclude that the answer to both questions is "no."

1. The allegations in the Exemplar Suits describe exclusively deliberate conduct. They expressly allege that McKesson intentionally flooded the market with opioids and intentionally flouted safeguards. The complaints do not premise liability on the mere fact that McKesson "shipped opioids to its pharmacy customers," as the company suggests. Rather, they seek to hold McKesson accountable for the deliberate manner in which it distributed opioids: by flooding the market, concealing facts, disregarding its duties, and ignoring risks. This is not conduct which McKesson plausibly could have engaged in by accident, and more importantly, the complaints never allege that McKesson engaged in such conduct by accident.

McKesson's chief argument to the contrary is that the complaints include standalone causes of action for negligence, as well as allegations about things McKesson merely "should have known," thus foreclosing the conclusion that only deliberate conduct is alleged. While it is true that negligence claims may be proven

by unintentional conduct, courts do not look to "the form or title of a cause of action [to] determine[] the carrier's duty to defend." *Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 225 Cal. Rptr. 3d 5, 20 (Cal. Ct. App. 2017). "The proper focus is on the facts alleged, rather than the theories for recovery." *Quan v. Truck Ins. Exch.*, 79 Cal. Rptr. 2d 134, 139 (Cal. Ct. App. 1998) (quoting *Michaelian v. State Comp. Ins. Fund*, 58 Cal. Rptr. 2d 133, 141 (Cal. Ct. App. 1996)). Looking to the facts alleged in the Exemplar Suits, we reiterate our conclusion that the underlying facts describe purely deliberate conduct. Negligence may be proven by inadvertent conduct, but as here, it may also be proven by conduct that is "allegedly negligent but nevertheless intentional." *Id.* at 143. The mere fact that such intentional conduct gives rise to causes of action for negligence does not transform those allegations into allegations of merely accidental conduct.

Similarly, references to what McKesson "should have known" throughout the complaints do not suggest that the "Exemplar Suits allege … the inadvertent failure to adopt better employee training and other procedures to prevent downstream diversion," as McKesson claims. To the contrary, the complaints allege that McKesson did know that it was engaging in such conduct and intentionally avoided taking remedial measures. When the complaints refer to things McKesson "knew or should have known," that language is deployed to establish that there was a foreseeable risk of harm stemming from McKesson's

actions. Such a showing is necessary to prove that McKesson acted negligently. *See* 1 Dobbs, *The Law of Torts* (2011) § 159 ("The term *should have known …* is one way of saying that the reasonable person standard governs the question of unreasonable risk and foreseeability, so the actor's subjective inability to appreciate a risk is immaterial."). The language is thus included for its legal effect, not as a factual contention that McKesson may not have actually known that it was engaging in certain conduct.[1]

2. Having concluded that the Exemplar Suits allege strictly deliberate conduct, the only remaining question is whether they also allege "some additional, unexpected, independent, and unforeseen happening" that may have caused the alleged damage. We conclude that they do not. For guidance, we look to *Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 225 Cal. Rptr. 3d 5 (Cal. Ct. App. 2017). In *Actavis,* the California Court of Appeals held that an insurer had no duty to defend Watson, an opioid manufacturer, against similar underlying opioid litigation. While there are certainly differences between *Actavis* and the instant case, we nonetheless consider *Actavis* on-point and follow its lead in concluding that the

---

[1] To the extent the "should have known" language suggests that McKesson may not have *actually* appreciated certain risks stemming from its intentional conduct, but only "should have known" about them, "[t]he insured's subjective intent is irrelevant" with regard to the consequences of his deliberate actions. *State Farm Gen'l Ins. Co. v. Frake,* 128 Cal. Rptr. 3d 301, 309 (Cal. Ct. App. 2011). Only the intent to act is considered. *Id.* at 309-10.

22-16158

Exemplar Suits allege no additional, unexpected, independent, and unforeseen cause.

In *Actavis,* the court considered the underlying complaints and found that they alleged strictly deliberate conduct before turning to the question of whether the complaints also alleged an intervening cause. *Actavis,* 225 Cal. Rptr. 3d at 15-17. It described that task as a determination of whether the alleged injuries were "'indirect unintended results' caused by 'mere negligence or fortuities outside Watson's control[,]' [o]r were … the direct result of 'the flood of opioids that entered the market' resulting from Watson's alleged scheme to increase the sale of opioid products." *Id.* at 18. The court concluded that the underlying complaints alleged the latter. *Id.* at 17-19.

Undertaking the same analysis, we reach the same result. The alleged injuries in the Exemplar Suits stem from opioid "addiction, overdoses, and death," which the complaints exhaustively demonstrate "were the direct result … of [McKesson's] alleged scheme to increase the sale of opioids." *See id.* at 18. McKesson asserts that the conduct of downstream actors including doctors, pharmacists, and opioid addicts who turned to heroin more immediately produced the injuries and must be deemed an additional, unexpected, independent, and unforeseen happening. We reject this argument. McKesson may not have "intended to cause injury, or mistakenly believed its deliberate conduct would not

7                                                          22-16158

or could not produce injury," but such injuries were "not unexpected or unforeseen" in light of McKesson's intentional acts. *See id.* As the *Actavis* court bluntly stated, "[t]he role of doctors in prescribing, or misprescribing, opioids is not an independent or unforeseen happening." *Id.* at 19. The same is true here for the doctors, pharmacists, and drug users upon whom McKesson seeks to lay blame.[2]

---

[2] McKesson raises two major categories of objections to our following *Actavis.* First, McKesson points out several differences between *Actavis* and this case. McKesson notes that *Actavis* involved opioid manufacturers, not distributors. But the *Actavis* court made no principled distinction on that basis. Rather, it distinguished cases brought against manufacturers on state law grounds, noting that those cases had found a duty to defend opioid manufacturers against similar litigation by applying Kentucky and South Carolina law, which both hold that a deliberate act may be an accident so long as "the resulting injury is unintentional" – a conclusion which is not permitted under California law. *Actavis*, 225 Cal. Rptr. 3d at 19-20. This court must also apply California law, so the out-of-state and -circuit decisions pressed by McKesson are of limited value.

McKesson also asserts that *Actavis* is inapposite because *Actavis* involved a deceptive marketing scheme, while this case involves a distribution scheme, and also because the bulk of the causes of action against Watson turned on "claims of fraud, deceit, and misrepresentation." But *Actavis'* reasoning is no less applicable simply because of differences in its fact pattern and theories of liability. Its core holding – that deliberate conduct as part of a scheme to sell more opioids is not converted into an accident by the presence of downstream actors (such as doctors or drug abusers) in the causal chain – is equally applicable here.

Second, McKesson argues that *Ledesma* called into question certain legal propositions relied upon in *Actavis.* That argument is unpersuasive for two separate reasons. First, *Ledesma* was explicitly limited to cases involving "negligent hiring, retention, and supervision" and thus does not control here. *Ledesma,* 418 P.3d at 402; *see also Ghukasian v. Aegis Sec. Ins. Co.*, 292 Cal. Rptr. 3d 923, 924 (Cal. Ct. App. 2022), *review den.* July 27, 2022 (recognizing limited scope of *Ledesma*). Second, the California Supreme Court initially granted review of *Actavis* and held it pending its decision in *Ledesma, Traveler's Prop. Cas. Co. of Amer. v. Actavis,*

At bottom, the complaints charge McKesson with intentionally oversupplying opioids on a massive scale. It is simply not credible that when doctors prescribed the drugs McKesson allegedly pushed, when pharmacists filled those prescriptions with drugs McKesson distributed, and when end users became addicted to those drugs, overdosed, resorted to heroin, and died, that was a mere "matter of fortuity." *See Navigators,* 212 Cal. Rptr. 3d at 246. The complaints allege that these happenings were the functionally inevitable and entirely foreseeable results of the deliberate conduct McKesson is alleged to have engaged in. They were not unexpected or unforeseen.

Having concluded that the Exemplar Suits do not allege an accident, we hold that there is no potential for coverage and thus Insurers have no duty to defend. As such, we need not reach the issue of whether the district court correctly determined that the Exemplar Suits allege a "bodily injury."

**AFFIRMED.**

---

410 P.3d 1221 (Cal. 2018) (granting review), and then dismissed review after *Ledesma* was decided. *Traveler's Prop. Cas. Co. of Amer. v. Actavis*, 427 P.3d 744 (Cal. 2018) (dismissing appeal). That leaves the Court of Appeal's decision in *Actavis* as clear and controlling guidance that this court must follow. *See Lone Star Sec. and Video, Inc. v. City of Los Angeles,* 827 F.3d 1192, 1200 (9th Cir. 2016)**.**